James K. NAYLOR, Jr., and Anna Lee Naylor, Appellants,

v.

Leila L. GUTTERIDGE and Sarah F. Davis, as Guardians of the Person and Property of Carrie F. Haines, Incompetent, Appellees.

No. 11618.

Court of Civil Appeals of Texas.

Austin.

July 17, 1968.

Rehearing Denied Aug. 14, 1968.

Mitchell, Gilbert & McLean, Phillip W. Gilbert, Arthur Mitchell, Austin, for appellants.

Maloney, Black & Hearne, Thomas Black, Austin, for appellees.

O'QUINN, Justice.

This is a suit for debt brought by the guardians of an incompetent against a man and his wife who over a period of several years had business relations with the ward before she was declared incompetent.

The guardians and the ward are residents of the State of Florida. Suit was brought in Travis County, Texas, the residence of defendants.

Leila L. Gutteridge and Sarah F. Davis, as guardians of the person and estate of Carrie F. Haines, incompetent, filed suit against James K. Naylor, Jr. and wife, Anna Lee Naylor, on a promissory note and other forms of debt on December 6, 1966, in the sum of $20,453.67.

The case was tried before the court without a jury. The trial court entered judgment against James K. Naylor, Jr. and Anna Lee Naylor on January 30, 1968, for recovery by the guardians of the sum of $6,055.42. No findings of fact or conclusions of law were filed and none was requested.

James K. Naylor, Jr. and Anna Lee Naylor have appealed and assign fourteen points of error. The appellees have replied under seven counterpoints.

It is apparent from the record that the award of $6,055.42 to the guardians represents a promissory note in the amount of $2,500, dated May 22, 1964, with interest as provided in the note, and $500 attorney's fees as stipulated, and $2,500 for a loan made by Carrie F. Haines to James K. Naylor, Jr., on October 20, 1964.

In proof of the note, the guardians introduced a promissory note, dated May 22, 1964, payable to Carrie F. Haines in the principal sum of $2,500, providing interest at six percent per annum from date of the note, and with due date of November 22, 1964. The note was signed by James K. Naylor, Jr. Execution of the note and its authenticity are not questioned. The guardians also introduced a check in the sum of $2,500, dated May 7, 1964, from Carrie F. Haines to James K. Naylor, in proof of the consideration received by Naylor for the note. The note and the cancelled check were among the personal effects of Carrie F. Haines coming into the custody of the guardians.

The guardians also introduced into evidence a check for $2,500, dated October 20, 1964, from Carrie F. Haines to James K. Naylor, Jr. Naylor admitted in testimony given at the trial that this check was a "new obligation above and beyond the one evidenced by the note of May 22nd." In their "first supplemental answer," a sworn pleading appearing to be in the nature

of an amended answer, the Naylors pleaded in March, 1967, "that an additional advance was made by Carrie F. Haines to the Defendants by cehck [check] dated October 20, 1964, in the amount of $2,500.00, and that this is the only *obligation presently current and unpaid.*" (Emphasis added) Indorsement on the check shows deposit to a special account of James K. Naylor, Jr. and Anna Lee Naylor.

On October 8, 1964, about twelve days earlier, Naylor had written "Dearest Carrie" (Haines) beginning with the statement, "I am enclosing a check for $25 as a payment on the many times you have helped us in the past," which he assured her "will be a regularly monthly payment from now on," and ending with the plea, "I need $2,772.18 * * * and I will send you a note * * *" To this was added in conclusion, "I still want you to come and live with us, so that you can at least enjoy the fruits of your endeavors. Please let me hear from you immediately. We love you very much."

The Naylors defended the suit on the ground that the note of May, 1964, and the loan evidenced by the check of October, 1964, had been paid in full. They resisted the claims for loans prior to 1964 (in the years 1956 through May 27, 1963) totaling more than $12,600, on the ground that these were barred by statutes of limitation.

Carrie F. Haines was declared an incompetent in a Florida court in an order entered on April 26, 1966. One of the guardians named by the court, Sarah F. Davis, testified that she had been a close associate and friend of Carrie F. Haines beginning in 1940; that she assisted Carrie F. Haines, beginning in 1946, to prepare work sheets for income tax returns, and that she was familiar with Mrs. Haines' manner of doing business in her business transactions. The note and checks were part of the records and business papers of Mrs. Haines coming into the care of the guardians.

In the trial of this case the Naylors contended that the obligations represented by the note of May, 1964, and the check of October, 1964, were paid in full. James K. Naylor first made the claim of payment in a letter dated May 26, 1966, to an attorney in Florida representing the guardians and their ward. Naylor wrote at the time that he had "packaged all of the old files and correspondence and stored them for future use," but that since receiving the attorney's letter Naylor "had been trying to locate the papers that you have asked for." To this Naylor added, "I have a number of cancelled checks and cancelled notes somewhere in the stored files." In conclusion Naylor told the attorney, " * * * I am sure that I can satisfy your request when our audit and search for records is complete."

If the audit and search for records were ever completed, Naylor did not make the cancelled checks and cancelled notes available at the trial of this case. In fact, at the trial Naylor testified, with respect to records reflecting payment, as follows:

"Q You have no receipts, no books, no entries, no nothing that would reflect these payments?

A No, sir."

This testimony was followed by Naylor's claim that the payments were reflected in correspondence between him and his mother-in-law, Mrs. Florence Malka, who resided in Florida and was acquainted with Carrie F. Haines. None of this correspondence was produced at the trial.

Naylor testified that all payments of these obligations were made in cash, in sums ranging from $500 to $1,250, sent by him either through unregistered United States mail, or in sealed envelopes carried by his 17-year-old daughter when she went to Florida to visit Mrs. Malka in June and again in December of 1964. Mary Naylor, the daughter, testified by deposition that she did not know the contents of the envelopes that she delivered to Mrs. Malka.

The concluding portion of Mary Naylor's testimony is repeated:

"Q Did your grandmother tell you she had delivered it to Mrs. Haines?

A No. Not that I remember.

Q Do you know anything else about this transaction?

A That is all. It is sort of new to me.

Q What?

A It's new to me.

Q Did Mrs. Haines ever say anything to you about your father owing her some money?

A No.

[Counsel] I think that is all."

For the payments Naylor claims he made in cash to Mrs. Haines through Mrs. Malka, amounting to enough at least to discharge the $5,000 in 1964 obligations, Naylor admits he obtained no receipts from Mrs. Haines.

Under cross-examination, Naylor, who was engaged in the bonding insurance business, testified as follows with regard to obtaining receipts:

"Q And when you pay cash, you get a receipt, don't you, Mr. Naylor?

A Or a credit of some kind.

Q Neither of which you did in Mrs. Haines' case?

A No, sir.

Q And you have no letter whatsoever from Mrs. Haines acknowledging any receipt of any of these payments?

A Not that I could find, no sir."

The Naylors made no attempt to show any credit reflected in Mrs. Haines' records which appear to have been available at the trial. The promissory note for $2,500 had not been returned to Naylor, nor was the note marked showing any credits for payments claimed by Naylor to have been made.

When asked by the trial judge how he knew how much he owed Mrs. Haines at any given time, Naylor replied, "Just kept a figure in our heads."

The court continued his examination with particular reference to a cash payment in June, 1964, of $1,250 which Naylor claimed he made to Mrs. Haines through Mrs. Malka:

"The Court: Do you have any records by which, say, the one thousand two hundred and fifty dollars that you say you paid in June of 1964 came out of any funds that you had on deposit in any bank and was converted into cash?

The Witness: No, sir."

Naylor produced no records showing the source of any of the cash payments he claimed to have made Mrs. Haines either in 1964 or at any other time.

Naylor claimed that he paid interest on the 1964 promissory note, but admitted that he did not show a deduction of any kind of interest in his income tax returns for 1964 and 1965.

In an effort to corroborate his claim of cash payments to Mrs. Haines in discharge of the 1964 obligations, Naylor introduced the testimony by deposition of his mother-in-law, Mrs. Florence Malka. In his testimony at the trial, Naylor tracked with substantial consistency the testimony previously obtained from Mrs. Malka in her deposition. Naylor testified by deposition, however, prior to the trial, and this testimony was almost entirely in conflict with the testimony of Mrs. Malka in her deposition.

On deposition Naylor said that he paid $500 early in June, 1964, but Mrs. Malka claimed the amount paid was $1,250. Naylor in his deposition swore that he had made a payment of $1,250 in October of 1964, a payment Mrs. Malka did not verify in her deposition. Naylor's claim of a

payment of $1,250 in October lacks consonance with the letter of October 8, already noted, in which he was making a $25 payment "on the many times you have helped us in the past," and promising more like it each month, while in the same paper imploring Mrs. Haines to send him "immediately" $2,772.18 for which he would give her his note.

In his deposition Naylor swore he sent $1,000 cash on June 30, a date he changed at the trial to June 25. Mrs. Malka had testified that Mary Naylor was still visiting in Florida when the $1,000 was paid, but that the girl "departed the 27th, or the 28th or the 29th, the last part of the month" of June. Naylor in his deposition had said that his daughter was still in Florida on June 30 and that he mailed the money to her in an envelope to be delivered to the grandmother. Mrs. Malka, the grandmother, swore in her deposition that the envelope arrived about two weeks after Mary Naylor arrived which the grandmother said was June 6 or 7. It appears Mrs. Malka was claiming payment had been made around June 21, nearly ten days prior to the date Naylor specified in his deposition.

At the trial Naylor claimed he made a payment on December 4 or 5, in 1964, by sending it in an envelope by his daughter, again going visiting in Florida, for delivery to Mrs. Malka. In his deposition Naylor made no mention of this payment. In her deposition, Mrs. Malka testified that Mary Naylor did not arrive in Florida until about December 23 and left about December 28 or 29. The grandmother swore that Mary Naylor, after arriving gave Mrs. Malka an envelope containing $750 which she took to Mrs. Haines. Naylor admitted at the trial that Mrs. Haines wrote him a letter dated December 26, 1964, in which she made no mention of any payment, recent or otherwise, but did say she had not seen Mrs. Malka "since Thursday, December 24th."

Mrs. Haines' bank statements covering the time when Naylor claims he made cash payments to Mrs. Haines show no transactions at the periods Mrs. Malka claims in her deposition that Mrs. Haines deposited the cash in the bank. It was Mrs. Malka's testimony that she went with Mrs. Haines to the bank.

Mary Naylor testified by deposition after hearing her "father's testimony about how [she] * * * delivered some money to * * * [her] grandmother * * *" The daughter testified she never saw any money, only sealed envelopes her father had told her to give the grandmother to take to Mrs. Haines, and was never present at a delivery to Mrs. Haines. Her grandmother did not tell her she delivered anything to Mrs. Haines. Mary Naylor concluded her testimony "about this transaction" with the abstruse statement, "It's new to me." Her testimony regarding the 1964 transactions was given in 1967, at which time she said, "It is sort of new to me."

The record is entirely devoid of bank statements, correspondence, cancelled checks, cancelled notes, memoranda or other written evidence of payments of any kind by Naylor. His defense to the claims of the guardians on the promissory note of May, 1964, and the check of October, 1964, rests entirely upon the uncorroborated assertions by Naylor and his mother-in-law describing their intricate transactions involving sealed envelopes, most of them moving through a go-between who was kept completely in the dark as to what was going on. Naylor gave no explanation for employing methods of payments to Mrs. Haines that were not in keeping with ordinary business practices and which he admittedly did not use in payment of obligations to other persons.

Prima facie proof that the note of May, 1964, had not been paid was made by possession in the guardians at the time of suit, with no marks or indorsements on the note to show payment. The Naylors having interposed a plea of payment assumed the burden imposed by law to prove

payment. Twin City Bowling Lanes, Inc. v. C. I. T. Corporation, 376 S.W.2d 94 (Tex.Civ.App., El Paso, no writ); Rule 95, Texas Rules of Civil Procedure.

When Naylor admitted that Mrs. Haines loaned him $2,500 by the check dated October 20, 1964, a prima facie case in favor of the guardians was made out. The Naylors then had the burden to prove payment of the obligation. Burrus Mills, Inc. v. Hein, 399 S.W.2d 950 (Tex.Civ.App., Houston, writ ref. n. r. e.); Rules 95 and 185, Texas Rules of Civil Procedure.

The Naylors failed, as we have observed, to prove payment of either the note or the loan obligation by means of receipts or other usual and customary writings. Their defense through the relation of a series of unusual cash payments, sent by a 17-year-old girl who was not told the nature of her parcels, or by unregistered mail, in sums ranging from $500 to $1,250, without obtaining receipts for the payments, is the story of methods patently unthinkable and contrary to Naylor's own admitted practices.

The guardians in their brief characterize this defense as "inconsistent, suspicious, confusing, indefinite and completely contrary to common experience and common sense. It is either inconsistent with or uncorroborated by all of the documentary evidence at hand."

It is settled that the credibility of interested witnesses and the weight to be given their testimony is to be determined by the trier of the facts. Certainly Naylor, his daughter, and his mother-in-law are all interested witnesses. The trial court may disbelieve the testimony of the interested witness even though it is uncontradicted, and the court may accept or reject the testimony of a party in whole or in part.

We have examined the record with care to view the evidence upon which the trial court rested his judgment. We have reviewed the testimony of the witnesses that we might know the things they related to the trial court, either in person or by deposition.

The defense, molded in the main from the recitals of James K. Naylor, Jr., when scanned in all its particulars assumes a posture we must characterize even in its most favorable aspect as apocryphal. The trial court was able to observe Naylor as he unfolded his story and could witness Naylor's reactions and responses under examination by his own counsel, by the court, and by opposing counsel. The trial court evidently believed that the vessel Naylor had fashioned in which to preserve his defense simply would not hold water.

We hold that the trial court correctly awarded judgment to the guardians upon the evidence as to the obligations represented by the note of May 22, 1964, and the check of October 20, 1964.

On appeal the Naylors take the position that the obligation represented by the check of October 20, 1964, was barred by the two-year statute of limitation.

When the check was placed in Naylor's hand at the trial, he was examined with reference to its meaning in the following manner:

"Q Do you recall at all the check that you are holding in your hand that's dated October the 20th?

A No, sir, but I believe it's a new obligation.

Q It appears to be a check payable to you, isn't that correct?

A Yes, sir.

Q And it would be a new obligation above and beyond the one evidenced by the note of May 22nd?

A Yes, sir."

As already stated, the Naylors pleaded statutes of limitation to all obligations in their original answer. Subsequently, the Naylors pleaded the two-year statute of

limitation to all claims beginning with 1956 and ending with March 27, 1963. In this pleading the Naylors claimed payment of the note, and also acknowledged that the check of October 20, 1964, was "an additional advance * * * made by Carrie F. Haines to the Defendants * * * and that this is the only *obligation presently current and unpaid."* (Emphasis added)

The check dated October 20 obviously was given in response to Naylor's letter of October 8, mentioned above, in which Naylor stated the Naylors needed help with the down payment on a house "on or before the 20th of this month." Naylor told Mrs. Haines in his letter, "I would appreciate your help on the down payment." In this letter Naylor also told Mrs. Haines, "I will be able to increase the monthly payments in a couple of months to whatever figure you need, and the payments will remain constant * * * I need $2,772.18 to clear up the down payment with * * *"

The record plainly reflects that the letter of October 8 was offered and admitted without objection as a written companion to the check of October 20.

We hold that the obligation evidenced by the check of October 20, 1964, in the sum of $2,500, is not barred by the two-year statute of limitation, but is an indebtedness evidenced by or founded upon a contract in writing under the four-year statute of limitation. Article 5527, Vernon's Ann.Civ.Sts.

It has been held that a check, on the face of which appeared the word "loan," was evidence in writing of an obligation within the four-year statute of limitation. Hester and Wise v. Chinn, 162 S.W.2d 450 (Tex.Civ.App., Galveston, no writ). The Naylors admitted by their pleadings and Naylor testified that the check was given as a loan. The check of October 20, 1964, was the writing evidencing the admitted obligation. Naylor's letter of October 8, 1964, requesting the loan constituted further written evidence of the obligation and indicated the terms of repayment.

A check given to indemnify the payee for the cost of goods delivered to the maker until a bill of lading was procured by the maker and delivered to the payee in exchange for the check was evidence in writing of an obligation within the four-year statute where the payee was authorized to cash the check if the bill of lading was not forthcoming. The fact that parol evidence was required to explain or expand the obligation evidenced by the check did not take the obligation out of the statute. Leaverton v. Sunset Motor Lines, 322 S.W.2d 295 (Tex.Civ.App., Amarillo, no writ).

It is plain that a written check given as an admitted loan, in response to a written request for the loan and written promise of repayment, comes within the four-year statute of limitation and is not barred by the two-year statute.

For additional reasons, we hold that the obligation evidenced by the check of October 20, 1964, was not barred by the two-year statute of limitation.

The "supplemental answer" filed by the Naylors appears to be no more than an amended answer. The pleading clearly was not in response to any pleading by the guardians and the instrument adds no new information. This "supplemental answer" pleads the two-year statute, as we have noted, to claims from 1956 through March 27, 1963, but designates the check as "an additional advance" and "the only obligation presently current and unpaid."

A current and unpaid obligation is one presently enforceable and not an obligation past due. Pecos Merchantile Co. v. Texlite, 65 S.W.2d 811 (Tex.Civ.App., Dallas, affirmed 128 Tex. 57, 96 S.W.2d 73); Warren Co. v. Commissioner of Internal Revenue, 135 F.2d 679 (C.C.A., 5th Cir., 1943).

Under the Naylor pleadings, even if the two-year statute were applicable it was waived by them. The trial amendment filed by the Naylors subsequent to the "supplemental answer" in no way seeks to apply the two-year statute of limitation, but merely claims that the obligation had been paid in full. The plea of limitation is a special defense that must be pleaded specially or it will be deemed waived. Duckworth v. Dallas County Levee Improvment Dist. No. 6, 11 S.W.2d 263 (Tex.Civ. App., Austin, no writ).

The two-year statute of limitation, even if sufficiently pleaded by the Naylors, would not be applicable under the record to the obligation evidenced by the check of October 20, 1964, because (1) the statute was tolled when Mrs. Haines was declared incompetent on April 26, 1966 and (2) the Naylors failed to meet their obligation to establish when the loan became due.

Under Article 5535, Vernon's Ann.Civ. Sts., if a person entitled to bring an action for debt is of unsound mind at the time the action accrues, the time of disability will not be deemed a part of the time limited for commencement of the action. The disability of Mrs. Haines was not pleaded, but the issue was tried by consent. The Naylors introduced the order adjudging Mrs. Haines incompetent.

Article 5526, Vernon's Ann.Civ.Sts., the two-year statute of limitation, provides that actions "shall be commenced and prosecuted within two years after the cause of action shall have accrued."

It is clear from the record that the loan was not immediately due when made in October, 1964. Naylor's letter of October 8, asking for the loan, assured Mrs. Haines that monthly payments would be increased "in a couple of months to whatever figure you need, and the payments will remain constant." Naylor wrote in the letter about paying the obligation when "the property in Wilton Manors" sells, and Naylor promised "to send you a note with the increase adjusted accordingly." Mrs. Haines had no cause of action until it became clear that Naylor did not intend to honor the terms of his letter.

The Naylors, if relying on the two-year statute to bar the loan, had the burden to show when the cause of action accrued in order to demonstrate that the statute was applicable. From Naylor's letter to Mrs. Haines, it is obvious that the loan would not mature prior to December 6, 1964, less than seven weeks after the loan was made. Suit was filed December 6, 1966. It is reasonable to presume, in view of Naylor's promise to increase installment payments "in a couple of months," that the obligation was carried past December of 1964, which would take it out of the two-year statute.

The guardians attached to their original petition, in addition to the facsimiles of the promissory note and the two checks of 1964, the facsimiles of forty-four checks in various sums from Carrie F. Haines to Naylor or his wife. The dates of the forty-four checks began with June 18, 1956, and ended with March 27, 1963. The total of these checks was in excess of $12,000.

In their "supplemental answer" the Naylors "specifically state that the obligations evidenced by the exhibits * * * in the form of checks as follows, are barred by the two-year limitation:" followed by a list of the dates and amounts of each of the forty-four checks from June 18, 1956 to March 27, 1963.

The Naylors argue that the proof offered through Mrs. Sarah F. Davis, one of the guardians, that these checks represented unpaid advances or loans is inadmissible, and that the trial court erred in applying the payments described by Mrs. Florence Malka to these obligations.

The trial court properly permitted counsel for the guardians to interrogate Naylor with respect to each of the forty-four checks for the purpose of eliciting from

him an admission or denial that an obligation was represented by each of the checks. This inquiry was irrespective of whether the checks were barred by limitation. The Naylors had pleaded "that many of the items which are the basis of the Plaintiffs' suit * * * have been paid fully and finally by the Defendants and * * * Defendants will prove payment at the time of the trial * * *"

Under interrogation with respect to the forty-four checks, Naylor admitted that at least $5,100 of the more than $12,000 in checks represented cash advances used for his benefit. Concerning check number 3, in the amount of $1,000, Naylor said, "I feel certain that it propably went into the cabinet business." Check number 5 for $400 Naylor said was "probably a loan." Check number 13, with the notation "on Naylor note," Naylor admitted was money Mrs. Haines paid on Naylor's note at a Florida bank. Six checks, aggregating $3,200, were each marked with the notation "cashier's check was issued to the payee." Naylor admitted that the only explanation for these checks was that they represented loans Mrs. Haines made to him. One check for $300, marked "Hospital for Anna Lee," Naylor admitted he endorsed and "possibly could have been" payment of his obligation at the hospital.

At this point, counsel for the guardians examined Naylor about repayment of these loans in the following colloquy:

"Q   Now, Mr. Naylor, did you repay to the extent that these checks do represent an obligation on your part, money advanced to you for your benefit by Mrs. Haines, did you repay her?

A   Yes, sir.

Q   How did you repay?

A   In cash at various times and various amounts.

Q   All without a receipt?

A   Yes, sir.

Q   In dollar bills without a receipt?

A   In bills, yes, sir, and some in services.

Q   And what were the services?

A   Well, getting the people that owed her money to pay her, and looking after her a lot of times, and many and various things.

Q   You had no agreement for any specified amount?

A   No, sir.

Q   And insofar as the cash payments that you were talking about, you have no evidence of that whatsoever?

A   No, sir.

Q   Although your books, I believe that you said you did keep it in your books, and you are not producing your books, is that your testimony?

A   I can't find them."

The trial court no doubt found Naylor's claim that he repaid the $5,100 in cash, without obtaining receipts or credits, or any other evidence of payment, merited no swifter acceptance than the uncustomary and involved maneuvering Naylor claimed to have employed in 1964 to pay the May note and the October loan. Naylor's claim of repaying the $5,100 lacked corroboration, even that of his mother-in-law.

The Naylors contend that the trial court, feeling that some of the debts barred by limitation were still outstanding, erred in applying "the more than $5,000.00 in 1964 payments * * * to those alleged obligations." They rely on the rule that the debtor may "direct the application of payments toward certain debts, as he pleases." The Naylors claim that such direction was given.

In their brief, the Naylors state, "There is no contradiction in the evidence to Appellant Naylor's testimony that the payments made to Carrie F. Haines in June of 1964 were to be applied to the note indebtedness,

and those payments totaled $2,250.00." We find no such testimony in the record.

With reference to directing how the payments of June, 1964, were to be made, Naylor testified as here set out:

"Q All right, now. When you sent this cash to Mrs. Malka, if you did, did you send her any instructions at all?

A Just to deliver it to Carrie.

Q That's all?

A Yes, sir.

Q You are positive of that, that you didn't give her any other instructions? In other words, you didn't specify at all what that payment was supposed to apply to?

A No, sir."

There can be no doubt from this testimony that Naylor failed to direct application of these payments, if made as he claimed, to the note of May 22 or to any other particular obligation.

Naylor's testimony that beginning the first week in June he made payments during that month of $2,250 on a $2,500 note, which he had signed less than three weeks before to mature the following November 22, is so alien to common sense and usual practices as to raise judicial suspicion if not disbelief.

■■■■■ Even if the trial court believed Naylor had sent Mrs. Haines $2,250 in June, 1964, the court had authority to approve the application of any payments to stale obligations in order to effect justice and equity. It has been held repeatedly that the power of the court to appropriate unspecified payments to the older items of indebtedness is not affected by the fact that one or more of the items is barred by a statute of limitation. Phipps v. Willis, 11 Tex.Civ.App. 186, 32 S.W. 801 (Tex.Civ.App., Galveston, writ ref.); Morgan v. Morgan, 406 S.W.2d 347 (Tex.Civ. App., San Antonio, no writ) and cases cited 406 S.W.2d 347, 350, col. 2.

■■■■ If the parties do not apply the payments, the law applies them to the oldest item then due. Aetna Casualty and Surety Co. v. Hawn Lumber Co., 128 Tex. 296, 97 S.W.2d 460; Hodges v. Price, 163 S.W.2d 868 (Tex.Civ.App., Galveston, writ ref. w. o. m.); J. I. Case Co. v. Laubhan, 64 S.W.2d 1079 (Tex.Civ.App., Amarillo, no writ) and cases cited 64 S.W.2d 1079, 1080, col. 2.

In points of error one and two the Naylors assail the trial court's judgment because the evidence did not support the implied finding that Anna Lee Naylor was indebted to Carrie F. Haines. The guardians concede on appeal that they are not entitled to judgment against the separate estate of Anna Lee Naylor and agree to modification of the trial court's judgment which would limit Anna Lee Naylor's liability to her community interest. The judgment will be modified to limit the liability of Anna Lee Naylor to her community interest.

Points of error three through fourteen urged by the Naylors are overruled.

The judgment of the trial court is here modified to limit the liability of Anna Lee Naylor to her community interest, and as so modified the judgment is in all things affirmed.

Modified and as modified, affirmed.