TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-96-00075-CV







Pamela Bodoin, Appellant



v.



Diversified Financial Systems, L.P., Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT


NO. 446,335, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING







PER CURIAM


 Pamela Bodoin appeals from a judgment that she owed Diversified Financial Systems, L.P.
("the Partnership") under two promissory notes. Bodoin contends that the Partnership did not properly or
sufficiently prove entitlement to payment or the proper amount due on the notes. We will affirm the
judgment.



BACKGROUND


 The evidence at trial consisted of two promissory notes executed by Bodoin and the
testimony of Robert Grauer, the Partnership's operations manager and custodian of records. The
Partnership is a limited partnership whose general partner is Diversified Financial Systems, Inc. ("the
Corporation," not a party here). Grauer admitted that he knew none of the signatories of the notes or the
various indorsements. He said he was present when the Partnership purchased the notes from the FDIC.

 Bodoin borrowed $75,000 in 1985 and $18,000 in 1986 from InterFirst Bank Austin,
N.A. and executed the two notes in question. An amendment to the 1986 note states that the note was
payable to InterFirst Bank Austin, N.A., now known as First Republic Bank Austin. The notes have the
same series of three indorsements; though the indorsements are not sequentially arranged on the notes, they
can be ordered logically. First, Ron C. Woodard indorsed the notes as attorney in fact for the FDIC,
receiver for First RepublicBank, indorsing the note to NCNB. The next indorsement is by Phil Elmore,
"SVP," from NCNB to the FDIC. The final indorsement is also by Elmore, as "attorney in fact," from the
FDIC to Diversified Financial Systems, L.P.; the indorsee on the 1985 note was originally Diversified
Financial Systems, Inc., but "Inc." was struck through and "L.P." interlineated. Grauer testified that he was
told that a secretary made the interlineation, but he did not know who the secretary was.

 Grauer testified about the amounts owing on the notes; he did so over objection because
he admitted that his knowledge was based entirely on the FDIC's calculations. He stated that $9,542.40
plus interest was due on the 1985 note and $17,247.21 plus interest was due on the modified 1986 note.



DISCUSSION


 Bodoin contends that the trial court erred by rendering judgment in the amounts Grauer
asserted. She argues by two points of error (1) that the Partnership did not prove it was the owner and
holder of the notes, and (2) that there was no competent evidence of the principal and interest balances due
under the notes.

 We will treat the first point of error as a challenge to the legal and factual sufficiency of the
evidence. Because there are no findings of fact and conclusions of law, we will imply all necessary findings
to support the judgment, provided the pleadings raise the proposition, the evidence supports it, and it is
based on a reasonable theory consistent with the evidence and applicable law. Holt Atherton Indus., Inc.
v. Heine, 835 S.W.2d 80, 83 (Tex. 1992). Because a statement of facts is part of the appellate record,
Bodoin may challenge the legal and factual sufficiency of the evidence to support these implied findings. 
See id. at 84.

 We apply the same standards to review the implied findings of fact as we would to a jury's
findings. Id. (legal sufficiency); Pizzitola v. Galveston County, 808 S.W.2d 244, 246-47 (Tex.
App.--Houston [1st Dist.] 1991, no writ) (factual sufficiency). To review a legal-insufficiency point, we
consider only the evidence and inferences supporting the finding and disregard all contrary evidence and
inferences. Weirich v. Weirich, 833 S.W.2d 942, 945 (Tex. 1992). If any evidence of probative force
supports the finding, we must affirm the judgment on that point. See In re King's Estate, 244 S.W.2d 660,
661 (Tex. 1951). To review a factual-sufficiency point, we must review and weigh all the evidence. Plas-Tex, Inc. v. United States Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989). We may set the judgment
aside only if the favorable evidence is so weak as to render the judgment clearly wrong and manifestly
unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986).

 To recover on a note, a plaintiff must prove that it is the owner and holder of the note, that
the defendant is the maker of the note, that the note is in default, and that the defendant owes a certain sum
on the note. Trueheart v. Braselton, 875 S.W.2d 412, 415 (Tex. App.--Corpus Christi 1994, no writ). 
Bodoin challenges only the first and last of these elements. The definition of "holder" includes a person who
possesses an instrument indorsed to his order. Tex. Bus. & Com. Code Ann. § 1.201(20) (West 1994)
(hereafter referred to as "Code"). (1) A person who possesses a note without the proper indorsements is not
a holder, but can show acquisition of the rights of a holder by proving the transaction through which he
acquired the instrument from a holder. Code § 3.201, comment 8. In a suit by a holder, introduction of
a note makes a prima facie case for the holder where the execution of the note has not been denied under
oath. Clark v. Dedina, 658 S.W.2d 293, 296 (Tex. App.--Houston [1st Dist.] 1983, writ dism'd). On
summary judgment, where a tougher evidentiary standard applies, testimony in an affidavit that a particular
entity owns a note conclusively establishes ownership even without supporting documentation if there is no
controverting evidence. First Gibraltar Bank, FSB v. Farley, 895 S.W.2d 425, 428 (Tex. App.--San
Antonio 1995, writ denied); Christian v. University Fed. Sav. Assoc., 792 S.W.2d 533, 534 (Tex.
App.--Houston [1st Dist.] 1990, no writ).

 Grauer's testimony that the Partnership owns the notes is not directly controverted. Bodoin
complains, however, that the Partnership's supporting proof of ownership and holder status fails in two links
in the transaction chain. She complains about the lack of indorsement from InterFirst to First Republic and
two aspects of the transfer from the FDIC to the Partnership.

 The wording of the amendment to the 1986 note provides evidence to defeat Bodoin's
complaint regarding the absence of evidence of the "transfer" from InterFirst to First Republic. The
amendment indicates that InterFirst simply became known as First Republic, indicating no transfer, sale,
or other negotiation of assets and therefore no need for indorsement. (2) Though the language appears only
in connection with the 1986 note, it also provides sufficient evidence regarding the ownership of the 1985
note. Whether First Republic became a holder, the evidence regarding the "transfer" shows that it at least
acquired the rights of a holder.

 Bodoin complains that the indorsement to the Partnership on both notes is invalid. She
asserts that, because Elmore acted for NCNB when indorsing the note from NCNB to the FDIC, he could
not have then acted for the FDIC on the indorsement from the FDIC to the Partnership. She argues that
his failure to specify for whom he acted in his indorsement as "attorney in fact" on the FDIC-to-Partnership
indorsement necessarily implies that he was again acting for NCNB; since NCNB was not a party to this
transfer, the indorsement would be unauthorized. She cites no evidence to support this assertion. Grauer,
however, testified under cross-examination that Elmore was acting both on behalf of NCNB and as
attorney-in-fact for the FDIC; Grauer explained that NCNB was the bank holding company for the FDIC. 
Though Grauer did not produce documentation to support his assertion that Elmore was acting for the
FDIC, his assertion is uncontroverted. The distinction between Elmore's signature as SVP for NCNB and
his role as attorney-in-fact on the final indorsement supports that, on the latter, he was acting for a party
other than NCNB.

 Bodoin finally complains about the lack of evidence regarding who made or authorized the
interlineation changing the indorsee of the 1985 note from the Corporation to the Partnership. (3) Grauer's
testimony indicates that the interlineation occurred before the FDIC transferred the note. The FDIC
therefore retained the right to strike out the indorsement. Cf. Guaranty Fed. Sav. & Loan Assoc. v.
Horseshoe Operating Co., 748 S.W.2d 519, 527-28 (Tex. App.--Dallas 1988), aff'd in part and rev'd
in part on other grounds, 793 S.W.2d 652 (Tex. 1990). There is no evidence of fraud or a competing
claim by the Corporation for ownership or holder status. Grauer's uncontroverted testimony that the
Partnership, not the Corporation, purchased the note further provides evidence of the transaction
independent of the indorsement chain.

 We find legally and factually sufficient evidence to support the implied findings and
conclusions that the Partnership is the owner and holder of the notes. We overrule point one.

 By her second point of error, Bodoin contends that there was no competent evidence of
the principal and interest balances due under the notes. This point blends evidentiary objections with a
challenge to the legal sufficiency of the evidence. She contends that, without Grauer's testimony (admitted
over her objections), no evidence exists to support the judgment. The Partnership counters that Bodoin's
inadequate responses to requests for admission resulted in deemed admissions that prove the damages.

 We need not address the admission of the evidence or deeming of admissions because the
Partnership made an unrebutted prima facie case without either. The admission of the notes into evidence
provided a prima facie case that the notes were unpaid. Naylor v. Gutteridge, 430 S.W.2d 726, 731-32
(Tex. Civ. App.--Austin 1968, writ ref'd n.r.e.); see also Schlager v. Harris, 805 S.W.2d 893, 894 (Tex.
App.--Corpus Christi 1991, no writ). The 1985 note has no indication of any payment, while the
modification to the 1986 note shows a reduced balance of $17,422.35. The burden then shifted to Bodoin
to prove payment. Tex. R. Civ. P. 95. Bodoin neither pleaded nor proved any payment. There is,
therefore, sufficient evidence to show that she owed a combined sum of $92,422.35 in principal on both
notes, so sufficient evidence certainly supports the court's finding that she owes $26,789.61 in principal.

 We affirm the judgment.


Before Justices Powers, Aboussie and Jones

Affirmed

Filed: November 6, 1996

Do Not Publish

1.   Since the signing of the note and filing of the suit, the Texas legislature has amended the
Business and Commerce Code to adopt the revisions of the Uniform Commercial Code, effective
January 1, 1996. These revisions, found in the pocket part supplement to the code, do not apply
to this action. The code provisions in the main volume apply and will be cited.
2.   Previous cases have characterized the transition as a merger between InterFirst and
RepublicBank to form First Republic. NCNB Texas National Bank v. Coker, 765 S.W.2d 398,
398-99 (Tex. 1989) (orig. proceeding).
3.   This point of error does not affect the 1986 note because no such interlineation appears on
the instrument in the record; the indorsement was directly to the Partnership.


ip. She argues that
his failure to specify for whom he acted in his indorsement as "attorney in fact" on the FDIC-to-Partnership
indorsement necessarily implies that he was again acting for NCNB; since NCNB was not a party to this
transfer, the indorsement would be unauthorized. She cites no evidence to support this assertion. Gra