**CITY OF PORT ARTHUR, Appellant,**

v.

**Patricia L. BOWLING et vir., Appellees.**

**No. 7924.**

Court of Civil Appeals of Texas, Beaumont.

May 5, 1977.

Rehearing Denied May 26, 1977.

Geo. Wikoff, Earl Black, Port Arthur, for appellant.

Jon Burmeister, Port Arthur, for appellees.

KEITH, Justice.

City appeals from a judgment based upon jury findings that its maintenance of a sewer line constituted a nuisance amounting to a constitutional damaging of plaintiffs' property and the jury fixed the amount of damages at $11,800. City has prosecuted the appeal upon four points of error but we do not find it necessary to discuss each since we are of the opinion that the second point, interposing the two-year statute of limitations, is valid and dispositive of the cause. We reverse the judgment of the trial court and now render judgment for City for the reasons now to be stated.[1]

On June 26, 1975, several weeks after the motion for rehearing in *Bowling I* had been overruled by this court, and while the application for writ of error was still pending, plaintiffs filed this suit seeking damages. They alleged, in general terms, that City, in the operation of its sanitary sewer system near plaintiffs' home, permitted noxious gases to escape therefrom; that because of the obnoxious odor, plaintiffs were deprived of the enjoyment of their home; that, because of the escape of hydrogen sulfide gas from the City's mains, the copper drain waste pipes in plaintiffs' home were so damaged and injured that sewer water and waste materials emptied into the walls of plaintiffs' home causing extensive damage "which in turn caused tremendous mental anguish and aggravation." A further allegation was made that the hydrogen sulfide gas was present in "greater concentrations than normal, causing additional personal injuries to the Plaintiffs."

The jury found that because of the odors escaping from defendant's sewer line near plaintiffs' property there had been both a "taking" and a "damaging" thereof which caused a diminution in the market value of such property in the sum of $11,800. Other issues found that the operation of the sewer line "constitutes a nuisance" as defined in the charge; that the nuisance was a proximate cause of plaintiffs' damage; that the nuisance was not permanent but temporary. Other answers established that the nuisance "was created before June 26, 1973", and in answer to an inquiry as to *when* the odors and fumes from the defendant's sewer line constituted a nuisance, the jury responded "on 1967". The jury did not find defendant guilty of negligence but did find that the difference in rental value immediately prior to and immediately after the creation of the nuisance up to the time of trial was $3,240.

The quasi-tort of which plaintiffs complained in the trial court was one arising under the doctrine of inverse condemnation or the so-called "constitutional taking".[2] In

---

1. This is the second time we have reviewed a controversy between the same parties involving the same subject matter. See *Bowling v. City of Port Arthur*, 522 S.W.2d 270 (Tex.Civ. App.—Beaumont 1975, writ ref'd n. r. e.). Since we are authorized to take judicial notice of our own records under the line of authorities collated in *Barnett v. Maida*, 523 S.W.2d 325,

327 (Tex.Civ.App.—Beaumont 1975, writ ref'd n. r. e.), we know that the application in *Bowling I, supra*, was refused, no reversible error, on July 7, 1975, and the motion for rehearing on said application was overruled on July 30, 1975.

2. *Tex.Const. art. I, § 17*: "No person's property shall be taken, damaged or destroyed for or

the seminal case of *City of Abilene v. Downs,* 367 S.W.2d 153, 158 (Tex.1963), the Court was "called upon to consider the troublesome problem of damage occasioned by the invasion of air space by noxious odors, flies, and insects occasioned by the construction of a municipal sewage treatment plant.[3] The *Downs Court* held that where the odors result in personal discomfort and annoyance to those who live upon the land—as in the case at bar:

"The damages consequent therefrom are recoverable as a taking or damaging of private property for a public use under Article I, Section 17, of the Constitution *only if, and after,* the operations of the sewer farm constitute a nuisance." (367 S.W.2d at 158, emphasis supplied)

The Court quoted at length from *Sherman Gas & Electric Co. v. Belden,* 103 Tex. 59, 123 S.W. 119, 120 (1909), concluding with this language:

" 'If there be no nuisance, there can be no recovery of damages for such annoyance as may exist, nor for diminution in the value of the property.' "

The *Downs Court* also held:

"Liability arose against Petitioner [City] when, and not until, the operations of its sewage disposal system were such as to constitute a nuisance . . .." (367 S.W.2d at 160)

▆ Where there has been a taking of the property by a physical invasion or appropriation thereof, "the land limitation rather than the general limitation statutes apply to such inverse condemnation proceedings." *Brazos River Authority v. City of Graham,* 163 Tex. 167, 354 S.W.2d 99, 109 (1961). Thus, in *Brazos River* the flooding of the sewage disposal plant amounted to a physical invasion thereof and the 10-year statute controlled.

▆ The jury in our case found as a fact, based upon a great deal of evidence of probative nature, that the nuisance was created more than two years before plaintiffs brought their suit (in 1975), and had existed since 1967. The two-year statute of limitations, *Art. 5526, subdiv. 1 (1958),* applies for "injury done to the estate or the property of another." See *Atlas Chemical Industries, Inc. v. Anderson,* 524 S.W.2d 681, 685 (Tex.1975).[4]

Plaintiffs rely principally upon *City of Houston v. McFadden,* 420 S.W.2d 811 (Tex. Civ.App.—Houston [14th Dist.] 1967, writ ref'd n. r. e.), but we do not find this case to be persuasive in the case at bar. In *Downs, supra,* it was held that the nuisance amounts to a "damaging" of the property, whereas, *McFadden* holds that the continual flying of noisy airplanes over plaintiff's house amounted to a "taking" under the constitutional provision noted earlier. Other cases have held that the type of injury found in *McFadden* amounted to a taking. See, e. g., authorities discussed in *Jefferson County v. Farris,* 476 S.W.2d 457, 459 (Tex. Civ.App.—Beaumont 1972, orig. proceedings); *Jefferson County v. Cohrt,* 487 S.W.2d 444 (Tex.Civ.App.—Beaumont 1972, no writ), wherein it was held that eminent domain proceedings constituted the proper method of acquiring such an easement.

From the undisputed evidence, and based upon the jury verdict, the nuisance affected plaintiffs' lands more than two years before the present suit was instituted, therefore, the two-year statute of limitation controls the liability question. Thus, when the jury found, in answer to Special Issue No. 18 that the odors and fumes from City's sewer line had constituted a nuisance since 1967, judgment should have been entered for defendant City.

---

applied to public use without adequate compensation being made . .. ."

**3.** The quotation is from the late Justice Norvell, "Compensable and Noncompensable Damages", *SW. Legal Foundation Institute on Eminent Domain 1, 19 (1963).*

**4.** This holding in *Anderson* was not affected by the subsequent action of the majority in reinstating, on rehearing, the award of exemplary damages.

We do not find it necessary to discuss the remaining points of error brought forward. It now becomes our duty to render the judgment which the trial court should have rendered: that the plaintiffs take nothing by reason of their suit.

The judgment of the trial court is reversed and judgment rendered that the plaintiffs take nothing.

REVERSED and RENDERED.

DIES, Chief Justice, dissenting.

I respectfully dissent. I believe the case we review is almost identical to *City of Abilene v. Downs*, 367 S.W.2d 153 (Tex. 1963). There, respondents alleged the sewage disposal plant of the City of Abilene caused

" '. . . the obnoxious fumes and obnoxious odors which spread across and invaded the property and buildings became so offensive as to make their premises unfit for continuous habitation; that such odors from and after the date hereinabove set out being generated on and originating from the sewage disposal plant of the defendant have become so offensive and collect on the property of these plaintiffs that their property has been diminished in value and damaged as hereinafter set out in violation of Section 17, Article One of the Constitution of Texas.' " (367 S.W.2d 156).

The Court held:

"The damages consequent therefrom are recoverable as a taking or damaging of private property for a public use under Article I, Section 17, of the Constitution only if, and after, the operations of the sewer farm constitute a nuisance." (367 S.W.2d 158)

It is true that in discussing the limitation question the Court said:

"Article 5526, Vernon's Ann.Tex.Stats., imposes a limitation period of within two years after the cause of action shall have accrued regarding actions in trespass for injury done to the estate or property of another." (367 S.W.2d 159)

But it did not dispose of the case on the basis of *Tex.Rev.Civ.Stat.Ann. art. 5526 (1958)*. Nor did the Court conclude this was the applicable statute of limitation.

The Court concluded the burden was on the City of Abilene to establish its defensive plea of limitation which it had failed to do by not requesting or securing a finding when operations of the sewage facilities were such as to constitute a nuisance under the standard to be applied.

Our case then is one of inverse condemnation which had its inception in the creation of a nuisance in 1967, as found by the jury. This case was filed in 1975.

Limitation in such a case is governed by *Brazos River Authority v. City of Graham*, 163 Tex. 167, 354 S.W.2d 99, 109–110 (Tex. 1961):

"We might add, however, that insofar as the sewage disposal plant is concerned, we have a taking by inverse condemnation and the great weight of American authority supports the position that, absent a particular statute covering the situation, the land limitation rather than the general limitation statutes apply to such inverse condemnation proceedings. [citing authorities] The Texas rule is in accord. In case of a 'taking' of property, the city's right thereto would not be barred if ever until the expiration of the ten year period necessary to acquire lands by adverse possession under Art. 5510, Vernon's Ann.Tex.Stats."

One of the cases cited by J. Norvell in *Brazos River Authority, supra*, is *Tarrant County Water Control and Imp. Dist. No. 1 v. Fowler*, 175 S.W.2d 694 (Tex.Civ.App.—Dallas 1943, writ ref'd w. o. m., 142 Tex. 375, 179 S.W.2d 250 (1944). There, Fowler was the owner of 184 acres of land on both banks of Ash Creek which flows from the west into the West Fork of the Trinity River. The water district completed Eagle Mountain Dam across the West Fork of the Trinity. Fowler sued on the basis that the dam produced a backwater condition in Ash Creek causing water constantly to be stored in the channel of Ash Creek, which caused his riparian valley lands to be inundated.

The Court held this was a "taking" and damaging of property under Art. 1, Sec. 17 of the Texas Constitution and had this to say about the question of limitations:

"'When under such a Constitution property is appropriated to the public use without complying therewith, the owner's right to compensation is not barred except by adverse possession for the prescriptive period.'" (175 S.W.2d 700)

In *Tarrant County Water Control & Improvement Dist. v. Reid*, 203 S.W.2d 290 (Tex.Civ.App.—Fort Worth, writ ref'd n.r.e.) (also cited in *Brazos, supra*), Reid alleged that the Eagle Mountain Dam slowed down the overflow water across his land, thereby depositing sand, gravel and other debris and also caused the channel of the river adjacent to his land the branch there of running through his land to be filled with sand to the point where they were wholly inadequate to carry the normal flow of water.

The court held this to be a "taking" under the Texas Constitution and that a claim would not become barred before the period necessary to acquire land by adverse possession.

I do not agree with the majority that *City of Houston v. McFadden*, 420 S.W.2d 811 (Tex.Civ.App.—Houston [14th Dist.] 1967, writ ref'd n. r. e.) is not persuasive. There, plaintiff purchased his property in 1954. In 1960, the City extended its runway to make possible the landing and take-off of jet propelled aircraft, causing physical damage to his property, such as vibrations, wall cracks and noise. In citing *Griggs v. Allegheny County*, 369 U.S. 84, 82 S.Ct. 531, 7 L.Ed.2d 585 (1962), the Houston court said:

"This type of action has been recognized and approved as a 'taking' of property, in the constitutional sense, in the nature of an air easement for which compensation must be made." (420 S.W.2d 814)

It is difficult for me to accept that noise and vibrations from aircraft constitute a "taking", while leaking sewer fumes do not.

The majority cites *Jefferson County v. Cohrt*, 487 S.W.2d 444 (Tex.Civ.App.—Beaumont 1972, no writ), and declares, "wherein it was held that eminent domain proceedings constituted the proper method of acquiring such an easement." But there, a "clear zone easement" was taken pursuant to the Municipal Airports Act of Texas acquiring "a perpetual easement within the said Clear Zone Approach Area over and above . . . said property and premises an air space unobstructed by any structure or tree, as defined by law."

The *Cohrt Case* might be regarded as the typical or direct "taking" of property under the Constitution, but it in no way, as I see it, offers any method of relief for the plaintiffs in our case who are seeking damage for an "inverse condemnation", a taking by the City without court action. A "taking" under *Cohrt* provides a method of assessing damages to recompense an owner. In a situation of inverse condemnation, as in the case we review, no damages are paid unless and until the owner brings suit and prevails.

Originally our plaintiffs filed suit for negligence against City in the operation of its sanitary sewer system. *Bowling v. City of Port Arthur*, 522 S.W.2d 270 (Tex.Civ.App.—Beaumont 1975, writ ref'd n. r. e.). They gave notice to the City Manager, who referred it to the City's insurance carrier, and a City representative inspected the claimed damage. But because the notice was not verified and sent to the City Manager rather than the City Commission, we affirmed an order granting City a summary judgment. Now we propose to reverse a judgment for plaintiffs and render it for the City because plaintiffs failed to bring their suit within two years from the occurrence of the nuisance. This may make good "law", but it is poor equity.