In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-09-00180-CR


______________________________




THE STATE OF TEXAS, Appellant



V.



JUSTIN AUGUSTUS TATUM, Appellee




 


On Appeal from the 6th Judicial District Court


Lamar County, Texas


Trial Court No. 22756




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 The State of Texas, appellant, has filed with this Court a motion to dismiss its appeal. See
Tex. R. App. P. 42.2(a); State v. Miles, 994 S.W.2d 410 (Tex. App.--Waco 1999, no pet.). As
authorized by Rule 42.2, we grant the motion. See Tex. R. App. P. 42.2.

 Accordingly, we dismiss the appeal.


 Bailey C. Moseley

 Justice


Date Submitted: October 27, 2009

Date Decided: October 28, 2009


Do Not Publish






ption Locked="false" Priority="9" QFormat="true" Name="heading 5"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-09-00047-CV

                                                ______________________________

 

 

                                          NATURAL GAS
PIPELINE

COMPANY OF AMERICA,
Appellant

 

                                                                V.

 

                                 WILLIAM JUSTISS, ET AL., Appellees

 

 

                                                                                                  


 

 

                                       On Appeal from the 62nd
Judicial District Court

                                                             Lamar County, Texas

                                                            Trial
Court No. 65759

 

                                                                                                   

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                            Memorandum Opinion by Justice Moseley








                                                     MEMORANDUM 
OPINION

 

            When
Natural Gas Pipeline Company of America (NGPC) began to operate its natural gas
compressor station in Lamar County in 1992, many of the property owners in the
area did not consider it a desirable neighbor, complaining of the noise and
odor the compressor station generated.  Finally,
in June 1998, the State cited NGPC for exceeding permitted emissions
levels.  About two months after the State
issued that citation, the plaintiffs brought suit against NGPC, alleging that
noise and odor emanating from its compressor station constituted a permanent
nuisance.[1]  Progress on the suit lagged for approximately
ten years.  After a trial on the merits,
the jury concurred with some of the plaintiffs[2] and
awarded those plaintiffs $1,242,500.00 in damages for the diminution in value
of their properties.  The trial court
entered judgment on the verdict and awarded $645,229.00 in prejudgment
interest.[3]


            On
appeal, NGPC argues that the trial court erred because:  (1) the permanent nuisance claim was barred by
the statute of limitations, (2) the facts supporting the jurys finding of a
permanent nuisance are legally and factually insufficient, (3) the facts
supporting the jurys damage awards are legally and factually insufficient, and
(4) prejudgment interest was improperly awarded because the plaintiffs failed
to segregate their past and future damages.

Facts

            NGPCs compressor station #802 in
Lamar County, Texas (the station), commenced operation in 1992.  The station, located along a major natural gas
pipeline, filters liquids from the natural gas flowing through the pipeline, compresses
the gas to boost its pressure for further transmission, and then returns it to
the pipeline for transmission elsewhere.  Exhaust fumes from the stations operations
are expelled into the air through stacks.  

            Soon
after the station began operating, neighboring residents complained to NGPC and
to State regulators.  One of the
plaintiffs, William Bubba Justiss (Bubba Justiss) made numerous telephone
calls to NGPC complaining of the stations noise at least once per year from
1992 through 1996.  Bubba Justiss also made
telephone complaints about the stations noise and odor to the State regulators
at the Texas Natural Resources Conservation Commission (now the Texas
Commission on Environmental Quality, to which reference is made hereinafter
both in its former and in its present incarnation as TCEQ) in 1994, 1995, and
1996.  NGPC denied that the station
caused any such problems, and NGPCs testing showed that the noise and fume
levels were in compliance with government permits.  Nevertheless, NGPC took measures to alleviate
some of the noise by planting trees as sound breaks and installing hospital
quiet covers for some of their machinery. 

            The
plaintiffs and a mailman who had serviced the area for years testified that
although the noise and odor had been an annoyance from the date the station
began operations, in late 1997 and 1998, the noise and odor from the station
appreciably increased to the point it became unbearable. On June 12, 1998, the
TCEQ cited NGPC for a category 5 violation; under this classification, the TCEQ
indicated that the odors from the station were overpowering, highly
objectionable and (because such odors were capable of causing nausea and
headache) a person encountering them would need to leave the area.  A TCEQ category 5 violation is the most severe
level and indicates an odor level offensive enough to prevent working or
playing outside, would cause people to tend to remain inside, and even make it
difficult to eat or sleep in the impacted area.

            Two
months after the June citation was issued, the twelve plaintiffs (William Bubba
Justiss and Darlene Justiss, Joseph Justiss, Robert Rast, as Executor of the
Estate of Richard Rast, Tommy Alspaugh and Judy Alspaugh, Barry Cope and Tina
Cope, Joe Denton Mashburn and Christine Mashburn, and Joe Donald Mashburn and
Judy Mashburn) brought suit against NGPC, alleging that the noise and odor from
the station constituted a permanent nuisance.  Over the next few months, attempting to
address the State citation and the complaints, NGPC raised the height of some
of its exhaust stacks by thirty feet and changed the brand of oil used in the
compressor engines from natural to synthetic oil.  NGPC argues that the TCEQ considers NGPCs
actions to have adequately resolved the emissions violations, and all of the States
subsequent air testing have supported that conclusion.  However, some of the plaintiffs testified that
the odor has yet to improve and in some instances has actually gotten worse
instead of better. 

            Almost
ten years after suit was filed, the case proceeded to trial on the merits.  Although some of the plaintiffs were awarded
nothing by the jury, the others were awarded $1,242,500.00 in damages for the
diminution in value of their property.  The
trial court entered judgment on the verdict and awarded $645,229.00 in
prejudgment interest. 

There is sufficient evidence that
the permanent nuisance claim accrued on June 12, 1998

            At
trial NGPC argued alternatively.  On the
one hand, it maintained that there was no nuisance, but on the other hand that
if the stations operation created a nuisance, the plaintiffs cause of action
was barred by the statute of limitations.  However, the jury found that the noise and
odor did create a permanent nuisance and that the claim for that nuisance arose
on June 12, 1998, the date the TCEQ cited NGPC for violations.  In its first point on appeal, NGPC argues that
the two-year statute of limitations for permanent nuisance bars the plaintiffs
suit and that the evidence supporting the jurys finding is legally and
factually insufficient. 

            Standard
of Review

            As
a general rule, the party asserting the statute of limitations bears the burden
of proving when the plaintiffs causes of action accrued in order to
demonstrate that statute of limitations was applicable as a bar to their claim.
 Hoffman
v. Wall, 602 S.W.2d 324 (Tex. App.Texarkana 1980, writ refd n.r.e.); Naylor v. Gutteridge, 430 S.W.2d 726
(Tex. Civ. App.Austin 1968, writ refd n.r.e.).

            When
a party attacks the legal sufficiency of an adverse finding on an issue on
which it has the burden of proof, the party must demonstrate on appeal that no
evidence supports the finding and that the evidence establishes, as a matter of
law, all vital facts in support of the issue. 
Dow Chem. Co. v. Francis,
46 S.W.3d 237, 241 (Tex. 2001).  Evidence
is legally sufficient if it would enable reasonable and fair-minded people to
reach the verdict under review.  City of Keller v. Wilson, 168 S.W.3d
802, 827 (Tex. 2005).  In evaluating the
evidences legal sufficiency, we credit evidence that supports the verdict if
reasonable jurors could, and disregard contrary evidence unless reasonable
jurors could not.  Kroger Tex. Ltd. Pship v. Suberu, 216 S.W.3d 788, 793 (Tex. 2006)
(citing Wilson, 168 S.W.3d at 827); Am. InterState Ins. Co. v. Hinson, 172
S.W.3d 108, 114 (Tex. App.Beaumont 2005, pet. denied).  We sustain legal sufficiency challenges when,
among other things, the evidence offered to establish a vital fact does not
exceed a scintilla.  Suberu, 216 S.W.3d at 793.  Evidence does not exceed a scintilla if it is
so weak as to do no more than create a mere surmise or suspicion that the
fact exists.  Id. (quoting Ford Motor Co.
v. Ridgway, 135 S.W.3d 598, 601 (Tex. 2004)). 

            When
a party attacks the factual sufficiency of an adverse finding on an issue on
which it has the burden of proof, it must demonstrate on appeal that the
adverse finding is against the great weight and preponderance of the evidence.  Francis,
46 S.W.3d at 242.  In determining factual
sufficiency, we must consider and weigh all of the evidence, and can set aside
a verdict only if the evidence is so weak or if the finding so against the
great weight and preponderance of the evidence that it is clearly wrong and
unjust.  Id.; Cain v. Bain, 709
S.W.2d 175, 176 (Tex. 1986); Croucher v.
Croucher, 660 S.W.2d 55, 58 (Tex. 1983).

            Law
and Facts

            A
plaintiff must bring a claim for permanent nuisance within two years of when
injury first occurs or is discovered.
 Schneider
Natl Carriers, Inc. v. Bates, 147 S.W.3d 264, 270 (Tex. 2004); see Tex.
Civ. Prac. & Rem. Code Ann. § 16.003 (Vernon Supp. 2009).  Accrual occurs upon notice of the injury or
when the injury first occurs, even if the claimant does not yet know the full
extent of the damages or the chances of avoiding them.  PPG
Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. Pship, 146 S.W.3d 79 (Tex.
2004). 

            NGPC
relies on Velsicol Chemical Corp. v.
Winograd, 956 S.W.2d 529 (Tex. 1997),[4]
wherein Judwin, an apartment manager, sued for damages caused by chlordane
(manufactured by Velsicol) sprayed by CMS (a pest exterminator) on apartment
buildings exteriors.  In 1987, the Texas
Department of Agriculture (TDA) investigated and determined that the chlordane
on the outside of the apartments walls had to be remediated and that chlordane
had also penetrated to the individual apartments.  However, because the chlordane levels
discovered inside the apartments did not exceed environmental regulations, the TDA
did not order the interiors remediated.[5]  Four years later, new tests revealed that
chlordane levels inside the apartments then exceeded environmental regulations
and required remediation.  Judwin (who
had been sued by tenants exposed to the chlordane) brought claims for property damage
and injury to business.  The Texas
Supreme Court held that the statute of limitations barred Judwins claims
because her injuries, and, therefore, her cause of action, first arose when it
was first learned by Judwin that chlordane residue was inside the apartments,
not when it was discovered that the chlordane levels exceeded environmental
regulations. 

            NGPC
also cites to City of Port Arthur v.
Bowling, 551 S.W.2d 155 (Tex. Civ. App.Beaumont 1977, writ refd n.r.e.),
where Bowling sued the city for property damage caused by emissions from the
citys sanitation system.  For years,
Bowling had complained about the odor and emissions from the citys sanitation
system.  The jury found for Bowling, but
also found that he first knew of the injury more than two years prior to filing
suit, and, therefore, the court held his claims were barred by the statute of
limitations.

            The
Velsicol case is distinguishable from
the present case because here, the issue of when conditions arose to a nuisance
level is in controversy because NGPC denied the existence of a nuisance at any
time prior to 1998.  Similarly, City of Port Arthur does not apply
because in City of Port Arthur the
jury determined that the injury first occurred more than two years prior to the
filing of suit, whereas the jury in this case found the injury to have first
attained a nuisance level within the limitations period. 

            In
this case, there is ample evidence to support the jurys determination that the
plaintiffs cause of action accrued on June 12, 1998.  NGPCs position was that its station operated
at a normal capacity for much of 1992 through 1998 and that no nuisance existed
at all from 1992 through 1997.  The TCEQ
citation informing NGPC that its emissions amounted to a substantial interference
with neighboring property owners was dated June 12, 1998, the same date found
by the jury to be the date upon which the cause of action accrued.  Tommy Rutledge delivered the mail in the area
of the station and the plaintiffs properties for twenty-five years and he
testified that the rotten egg-like odor from the station burns the nose and
throat, that it was so bad that he tried to transfer to a different route, and
that he began noticing the odors around 1998.  Several of the plaintiffs, including Tommy
Alspaugh, his wife, Judy, Joe Donald Mashburn, Christine Mashburn, Joseph
Justiss, Bubba Justiss and his wife, Darlene, testified that the noise and odor
from that station got much worse in 1997 and 1998, that at that point, it was
so bad that something had to be done, and that the conditions persisted and
even worsened over the ten years between the date of filing the suit until
trial.  

            It
is the jurys province to resolve conflicts in the evidence.  Wilson,
168 S.W.3d at 81920.  The jury remains
the sole judge of witnesses credibility and the weight to be given their
testimony; it is free to accept or reject all or part of a witnesss testimony.
 Golden
Eagle Archery, Inc. v. Jackson, 116 S.W.3d 757, 761 (Tex. 2003).  Therefore, it is the jurys province to decide
when the conditions caused by the station arose to nuisance levels.  Here, the jury was free to accept NGPCs
denials of any nuisance, accept the States date of citation as the date of
accrual, and consider the plaintiffs pre1997 claims and complaints about
noise and odor as being complaints about bothersome issues not yet rising to
the level of nuisance.  We find there is
legally and factually sufficient evidence to support the jurys finding that
the cause of action first accrued in June of 1998 and overrule NGPCs first
point of error.

There
is sufficient evidence that the stations operation amounted to a permanent
nuisance

            In its second point of error, NGPC
contends that the evidence supporting the jurys finding of a permanent
nuisance is legally and factually insufficient.

            Law
and Facts

            Question
one of the jury charge instructed the jury that in order to find that a
permanent nuisance existed as to any of the plaintiffs, the jury must first
find that the operation of the compressor station created a condition that
substantially interfered with the use and enjoyment of the land by causing
unreasonable discomfort or annoyance to persons of ordinary sensibilities and
that the conditions created by the station were sufficiently constant or
regular that their future impact can be reasonably evaluated.[6]
 Holubec,
111 S.W.3d at 37; Schneider Natl
Carriers, 147 S.W.3d at 283.  Sufficiently extreme foul odors, dust, noise,
and bright lights may constitute a nuisance.  Holubec,
111 S.W.3d at 3738; see also Bay
Petroleum Corp. v. Crumpler, 372 S.W.2d 318, 31820 (Tex. 1963). 

            In
weighing the evidence, it is the jurys duty to determine whether the
frequency, duration, degree, and extent of the conditions at issue amount to
the substantial interference required for a nuisance.  See
Schneider Natl Carriers, 147
S.W.3d at 281; West v. Brenntag Sw., Inc.,
168 S.W.3d 327, 336 (Tex. App.Texarkana 2005, pet. denied).  As a requisite to determine whether a
nuisance is temporary or permanent, the jury also decides whether similar
conditions are reasonably certain to continue in the future.  Schneider
Natl Carriers, 147 S.W.3d at 281; Mitchell
Energy Corp. v. Bartlett, 958 S.W.2d 430, 436 (Tex. App.Fort Worth 1997, pet.
denied) (affirming jury finding that injury to property was ongoing and continuous).


            In
Schneider National Carriers, the
Texas Supreme Court clarified the test for determining whether a nuisance is
permanent or temporary, and the court conducted a comprehensive analysis of the
distinctions between permanent and temporary nuisances.  147 S.W.3d 264.  Whether a nuisance is permanent turns on
expectations about its impact over a period of years.  Id.
at 276.  A nuisance is permanent if it is
constant and continuous, if injury constantly and regularly recurs, and if
future harm can reasonably be predicted and evaluated.  Id. at
272, 278 (quoting Bayouth v. Loin Oil Co.,
671 S.W.2d 867, 868 (Tex. 1984); Rosenthal
v. Taylor, B. & H. Ry. Co., 79 Tex. 325, 15 S.W. 268, 269 (1891)).  A permanent nuisance may also be established
by showing that either the plaintiffs injuries or the defendants operations
are permanent.  Id. at 283.  Conversely, a
nuisance is temporary only if it is so irregular or intermittent over the
period leading up to filing and trial that future injury cannot be estimated
with reasonable certainty.  Id. at 281.  A nuisance is temporary if it is occasional,
sporadic, intermittent, or of limited duration.  Bayouth,
671 S.W.2d 868; Rosenthal, 15 S.W. at
269. 

            The
issue here is whether there is legally and factually sufficient evidence that:  (1) the odor and noise created by operation of
the station caused a nuisance, (2) if a nuisance was created by the noise and
odor, did the nuisance begin on the date found by the jury, and (3) if a
nuisance was created, was it a permanent nuisance.

            The
testimony proffered by each of the plaintiffs regarding the character and
degree of conditions, noise, and odor generated by the station is similar.  Bubba Justiss, Joe Donald and Christine
Mashburn, and Tommy Alspaugh testified that the smell burns the nose and smells
like rotten eggs or car exhaust and is so bad that it makes it difficult or
impossible to work or play outside, hang-dry their laundry, or keep their
windows open for ventilation.  They
testified that the regular noise and vibration from the station sounds like a
large diesel truck is running in the driveway and there are unpredictable times
when the noise is much louder, occurring at all hours of the night and day.  However, prior to the June 1998 citation,
tests performed by NGPC and the TCEQ failed to reveal a nuisance, and NGPC took
remedial measures (e.g., planting banks of trees and using new hospital quiet
covers and insulators for some of their generators or engines) to dampen the
sound emitted from the station. 

            The
plaintiffs each testified that in the ten years since 1998, the odors have not
improved, and some, including the Rutledges, Bubba Justiss, Joseph Justiss, Joe
Denton Mashburn, Judy Mashburn, Joe Donald and Christine Mashburn, testified
that the smell has, indeed, worsened in the intervening years.  This worsening occurred even in spite of the
ameliorative measures taken by NGPC of changing the type of oil and raising the
height of the exhaust stacks at the station.  NGPC attempted to rebut this contention by
showing that the TCEQ tested the area in the fall of 1998 and throughout the
next year and that those tests revealed the emission odors were within
permitted levels and were no longer at a nuisance level.

            It
is the jurys province to resolve conflicts in the evidence.  Wilson,
168 S.W.3d at 81920.  The jury remains
the sole judge of witnesses credibility and weight to be given their
testimony, and is free to accept or reject all or part of a witnesss
testimony.  Jackson, 116 S.W.3d at 761.  From
the testimony and evidence in this case a rational juror could have found a
permanent nuisance. Such a finding is not against the great weight and
preponderance of the evidence.  Here,
there is ample testimony and evidence to support the jurys finding of a
nuisance and the ten years between the filing of suit and the time of trial
provided the jury an ample time period from which it could determine that the
conditions caused by the station are permanent.  Therefore, we overrule NGPCs second point of
error. 

The
jurys damage awards are supported by legally and factually sufficient evidence


            After finding that NGPCs station
created a permanent nuisance as to all the plaintiffs but the Estate of Richard
Rast and Barry and Tina Cope, the jury awarded those plaintiffs about $1.2
million.[7]
 Separate damage awards were given for
each plaintiff burdened by the nuisance.  Rather than using an expert witness to testify
to the diminution in value of their properties, the plaintiffs testified to
their own respective property values.  NGPC
argues in its third point of error that the evidence is legally and factually
insufficient to support the jurys damage awards.

            Standard
of Review

            For
this point of error, we apply the same standards of review for legal and
factual sufficiency challenges that we applied to NGPCs second point of error.

            Law

            The
attendant measure of damages for permanent nuisance is the difference, if any,
in the propertys market values immediately before and immediately after the
nuisance occurred.  See Schneider Natl Carriers,
147 S.W.3d at 276 (citing Crumpler,
372 S.W.2d at 320; Lone Star Gas Co. v.
Hutton, 58 S.W.2d 19, 20 (Tex. Commn App. 1933, holding approved)); see also Porras v. Craig, 675 S.W.2d
503, 504 (Tex. 1984). 

            The
proper way of proving diminution in property value is opinion testimony.  See State
v. Carpenter, 126 Tex. 604, 89 S.W.2d 194 (1936).  Opinion testimony concerning this measure of
damages is subject to the same requirements as any other opinion evidence with
one exception: even lacking the qualifications of an expert, the owner of
property can testify to its market value. Gulf
States Utils. Co. v. Low, 79 S.W.3d 561 (Tex. 2002); Porras, 675 S.W.2d at 504.  The
expertise and qualifications of the witness are merely factors to be considered
in weighing the testimony of an owner testifying about the value of his own
property.  Dillon v. Troublefield, 601 S.W.2d 141 (Tex. Civ. App.Austin
1980, no writ); Sw. Public Serv. Co. v.
Vanderburg, 581 S.W.2d 239 (Tex. Civ. App.Amarillo 1979, writ refd
n.r.e.).  Where the property owner is the
witness testifying to its value, the rules pertaining to establishing the
value of the property in question should be liberally construed.  First
Natl Bank of McAllen v. Brown, 644 S.W.2d 808 (Tex. App.Corpus Christi 1982,
writ refd n.r.e.).  

            NGPC
argues that:  (1) the plaintiffs were
unqualified to testify as to the value of their property; (2) their damage
testimony was unsupported speculation; (3) some of their damage testimony is
based upon intrinsic value, rather than market value; (4) even if the damage
testimony had a basis, it was conclusively rebutted by NGPCs experts
valuation testimony; and (5) none of the plaintiffs testified to the correct
measure of damages.

                        Qualification

            In order for a property owner to
qualify as a witness regarding the damages to his property, his testimony must
show that it refers to the market value (as opposed to its intrinsic value or
some other value measure).  Porras, 675 S.W.2d at 50405.  This requirement is usually met if the owner
demonstrates that he is familiar with its market value and his opinion is based
on that market value.  Id. at 505 (citing Moody v. Castleberry, 151 S.W.2d 960 (Tex. Civ. App.Texarkana
1941, no writ)); Khorshid, Inc. v.
Christian, 257 S.W.3d 748 (Tex. App.Dallas 2008, no writ).  In rendering an opinion concerning value, it
is not necessary that the owner of the property use the words market value so
long as his testimony reveals his familiarity with the market value of the
property and his opinion was based on that market value. Christian, 257 S.W.3d at 76061 (owner of cab had sold two cabs in
past and testified to diminished value of damaged cab at issue); see Redman Homes, Inc. v. Ivy, 920
S.W.2d 664, 669 (Tex. 1996).

            The following is the summary of the
evidence by the plaintiffs as to the value of their property:

·        
Tommy Alspaugh and his wife had lived in
Howland, Texas (the community where the station and the affected lands are
located), for almost fifty years.  Tommy
testified that their land is high quality property and well cared for.  He testified, and his wife, Judy, agreed, that
their property had lost fifty percent of its value ($1,000.00 per acre loss in
value) because of the conditions created by the station.

·        
Joe Donald Mashburn had lived in Howland his
entire life, was a loan officer at a bank, and testified that he was familiar
with the market value of real estate as a part of his employment.  He testified that the value of his property
had decreased by $400,000.00, an assessment in which his spouse, Judy Mashburn,
concurred.  

·        
Joe Denton Mashburn and his wife, Christine,
testified that they were lifelong residents of the area near the pump station,
owning a home on a three-acre tract and a separate nearby forty-acre
tract.  Christine testified that the home
and three acres would be worth maybe $100,000.00 if it were not afflicted by
the proximity of the pump station, but due to the negative influence of the
pump station, she [didnt] think it would be worth anything, but we might
could get 10 or 20,000 for it.  Although
Joe Denton agreed with the $100,000.00 valuation of their home property absent
the influence of the pump station, he believed that with the pump station, the
value was about $25,000.00.  Christine
testified that their forty-acre tract would be worth $1,000.00 per acre without
the station, but she doubt[s] if we could get half that much now.  Joe Denton disagreed with his wife, believing
the forty-acre tract to be worth more than she did, testifying that it was
worth $1,700.00 to $1,800.00 per acre without the station, but that the fair
market value today, with the station was only about $500.00 or $600.00 per
acre.

·        
Joseph Justiss grew up in Howland, built his
home there, and worked cattle on his property.  He had previously sold some of his real
property and believed that his home had decreased in value between $75,000.00
and $85,000.00 and that the value of his second tract adjoining the State had
decreased between $1,400.00 and $1,800.00 per acre due to the odor and
vibration from the station.  

·        
Bubba and Darlene Justiss had farmed their property
near the station for decades.  He
testified that the odor and noise from the station had decreased the value of
his property by about $1,250.00 per acre.  Darlene agreed with her husbands valuation
testimony.

            Because
an owners testimony is an offer of the owners best knowledge of the value of
his property, it constitutes sufficient evidence for the trier of fact to make
a determination as to the value based on the witnesss credibility.  Jones v.
State, 814 S.W.2d 801, 803 (Tex. App.Houston [14th Dist.] 1991, no pet.) (citing Sullivan v. State, 701 S.W.2d 905, 90809
(Tex. Crim. App. 1986)).  There is ample
evidence that the plaintiffs were familiar with their respective property and
the surrounding area, and were, therefore, qualified to give their opinions
regarding the diminution in value of their property. 

                        Unsupported speculation

            Where
the property owner affirmatively demonstrates that his opinion is cast in
terms of approximation and estimate unsupported by any relevant facts leading
to or supporting such approximation or estimate[,] the opinion testimony is too
conjectural.  Stinson v. Cravens, Dargan & Co., 579 S.W.2d 298, 299 (Tex. Civ.
App.Dallas 1979, no writ); see Ada Oil
Co. v. Logan, 447 S.W.2d 205 (Tex. Civ. App.Houston [14th Dist.] 1969, no
writ).  For example, in Royce Homes, L.P. v. Humphrey, a
property owner testified to the diminution in value of his home after a flood.  244 S.W.3d 570 (Tex. App.Beaumont 2008, pet.
denied).  On cross-examination, the owner
conceded that he calculated the post-flood value of his home by pulling [it]
out of the air[.]  Id. at 579.  The court held
his testimony to be speculation and, therefore, legally insufficient to support
the damage award.  Id. at 580.  Similarly, in
the case of Coffee v. City of Alvin,
after testifying to the value of his land, the owner was cross-examined
regarding whether or not he could substantiate or otherwise explain how he
determined that value.  641 S.W.2d 597
(Tex. App.Houston [14th Dist.] 1982), writ
refd n.r.e., 644 S.W.2d 709 (Tex. 1983).  The owner characterized his dollar figures as hypothetical
and as a rule of thumb which maybe he pulled out of the air and maybe cant
substantiate.  Id. at 601.  The court upheld
the trial courts finding that the owners property value testimony was of no
probative value because it was cast in terms of approximation and estimate and
unsupported by relevant facts.  Id. at 602.

            Unlike
Royce Homes and Coffee, in this case, other than asking whether the properties had
been independently appraised or offered for sale in the past, NGPC chose to
forego cross-examination of the plaintiffs regarding the facts supporting their
opinions, how they respectively determined their property values, or their
knowledge of local real estate values.  Rather,
each of the plaintiffs, save for Bubba Justiss, directly and affirmatively
testified to their opinion of the diminution in value of their property.  When Bubba Justiss was asked about the
diminution in value of his property due to the odor and noise from the station,
he responded:

            A.        I dont know. Its a hard thing for me
to say because I never ever thought in my mind that it was worth what the price of land is bringing now.  And the only thing that sold out that way
lately are the sites 

 

            .
. . .

 

            A         I dont
know. I dont know. Im going to say probably across the whole acreage $1250.

 

            . . . .

 

            A.        Decrease. 

 

(Emphasis added.)  The use by Bubba Justiss of the words probably
and I dont know might, if taken out of the context of the person uttering
them, be quite problematic.  However, the
jury could have easily taken into account that such qualifiers are common East
Texas vernacular which are not necessarily intended to diminish the definiteness
of the statement which follows; these words could have been discounted by the
jury as nothing more than verbal pauses and manners of speech, much in the same
vein as saying, Let me see now.  In
contrast, Bubba Justisss testimony regarding what the price of land is
bringing now indicates that he is familiar with the market value of real
property in the area.  We hold that no
plaintiff affirmatively demonstrated that his valuation opinion was unsupported
conjecture.  Thus, the testimony could
properly be given weight by the jury in reaching its decision.

                        Intrinsic value

            An
owners testimony regarding the value of his property must be based on market
value, rather than intrinsic or some other value.  Porras,
675 S.W.2d at 50405.  In Porras, a property owner testified to
his propertys value immediately before and immediately after an unauthorized
bulldozing of a portion of his property. 
Id. at 505.  He testified that it had diminished his
propertys value by $20,000.00.  When
asked to tell the jury your reasons for the difference of twenty thousand
dollars and how you arrived at it, Craig testified as follows:

Well I bought this land to build a retirement home
on and I am fifty-seven and my wife is fifty-six and shes not -- shes
crippled so she wants to get out in the country, too.  And we bought that for that reason and now we
are afraid to build out there.  And the
reason were afraid is because of the exotic animals that will be put next to
us.  Also they patrol the fence with
guns.  A sign on their fence theyll
shoot if you go across that fence.  And
about a month ago there was a fire started on the grass on my property and
burned in under my trees and if my wife had been there by herself she couldnt
have got away.   

 

Id.  The court held that
Craigs testimony was insufficient because it was no evidence of market value
as the owners testimony affirmatively showed that he referred to personal
rather than market value.  Id. 

            In
this case, NGPC argues that Joseph Justisss valuation testimony is based on
intrinsic value, rather than market value.   When testifying to the market value of his
property, Joseph testified that his property was worth more to him than it
would be worth to anybody.  However,
unlike the testimony in Porras, on re-direct
Joseph clarified that his earlier valuation testimony were his opinions of the
fair market value of his property.

                        Experts rebuttal

            In
forming his opinion, NGPCs expert testified that he had investigated local
land values, analyzed comparable sales prices in the area, and inspected the
plaintiffs properties.  NGPC argues the
valuation testimony of its well-qualified expert conclusively rebuts that of
the plaintiffs.  When a property owner
testifies to the value of his property, his lack of expertise and
qualifications are merely factors for the trier of fact to consider in weighing
the owners testimony.  Dillon, 601 S.W.2d 141; Vanderburg, 581 S.W.2d 239.  The conflicts between the plaintiffs
testimony and that of NGPCs expert presents a fact question for the jury
regarding the value of the properties in question.  It is the jurys province to resolve conflicts
in the evidence.  Wilson, 168 S.W.3d at 81920.  The jury is free to accept or reject all or
part of a witnesss testimony.  Jackson, 116 S.W.3d at 761.  Therefore, the jury was free to accept the
plaintiffs valuation testimony and reject that of the expert. 

            Incorrect
measure of damages

            NGPC
also argues that the plaintiffs failed to testify to the correct measure of
damages. The proper measure of damages for permanent nuisance is the
difference, if any, in the propertys market values immediately before and
immediately after the nuisance occurred.  See Schneider Natl Carriers, 147 S.W.3d at
276.  Because the jury determined that
June 12, 1998, was the date the plaintiffs claims accrued, the correct measure
of damages would be the difference in market value, if any, of each of the
plaintiffs properties immediately before and immediately after June 12, 1998.  Strangely, there is no evidence in the record
(presented by either the plaintiffs or by the defendant) of the plaintiffs
property values at this critical time.  Rather,
the plaintiffs testified to the 2008 value of their properties,[8]
and NGPC argues that because of that, there is insufficient evidence to support
the jurys damage awards. 

            Sufficiency
of the evidence must be reviewed using the definitions and instructions
contained in the unobjected-to jury charge, whether or not they accurately set
out the controlling  law.  City of
Fort Worth v. Zimlich, 29 S.W.3d 62, 71 (Tex. 2000); Soto, 52 S.W.3d at 204 (citing
Larson, 690 S.W.2d at 568; Allen, 380 S.W.2d at 609).  In this case, the damage question submitted to
the jury asked:

            What
sum of money, if any, do you find from a preponderance of the evidence would
fairly and reasonably compensate Plaintiffs for their damages, if any, which
were proximately caused by the Defendants interference?

 

            The
proffered jury instruction did not contain an accurate instruction as to the
proper measure of damages.  Although NGPC
objected to the jury instruction on damages, it failed to include the correct
measure of damages in its proffered damage instruction, as is required.  Under the circumstances we have before us, we
must determine whether there is legally and factually sufficient evidence of a sum
of money that would fairly and reasonably compensate Plaintiffs for their
damages, if any, which were proximately caused by the Defendants
interference[.]  Here, as explained in
the preceding sections, each plaintiff testified to their opinion of the
diminution in value of their property and each plaintiff testified to the noise
and odor conditions caused by the station.  We conclude there is sufficient legal and
factual evidence from which the jury could infer that the diminution values to
which the plaintiffs testified were caused by the stations interference.  We overrule NGPCs third point of error. 

Prejudgment interest may be
awarded for permanent nuisance damages

            The
judge awarded the plaintiffs $645,229.00 in prejudgment interest.  In its fourth point of error, NGPC argues that
an award of damages for a permanent injury includes future damages and that
because the plaintiffs failed to segregate the future damages from those
incurred in the past, the award of prejudgment interest must be vacated. 

            Law
and Facts

            A
judgment in a property damage case earns prejudgment interest.  Tex.
Fin. Code Ann. § 304.102 (Vernon 2006).  However, prejudgment interest may not be
assessed or recovered on an award of future damages.  Tex.
Fin. Code Ann. § 304.1045 (Vernon 2006).  Prejudgment interest is compensation allowed
by law as additional damages for lost use of the money due as damages during
the lapse of time between the accrual of the claim and the date of judgment.  Johnson
& Higgins of Tex., Inc. v. Kenneco Energy, Inc., 962 S.W.2d 507, 528
(Tex. 1998) (quoting Cavnar v. Quality
Control Parking, Inc., 696 S.W.2d 549, 552 (Tex. 1985)).  Compensation other than for the lost use of
money is a windfall, penalty, or fine, not interest.  Battaglia
v. Alexander, 177 S.W.3d 893, 907 (Tex. 2005). 

            To
recover prejudgment interest on an award of damages, the party seeking to
obtain prejudgment interest must segregate past damages from any future
damages.  Cavnar, 696 S.W.2d at 556, abrogated
in part on other grounds by Kenneco Energy, Inc., 962 S.W.2d 507; Cresthaven Nursing Residence v. Freeman,
134 S.W.3d 214, 223 (Tex. App.Amarillo 2003, no pet.).  Prejudgment interest is not recoverable on the
elements of damages at issue when this burden is not met because it is fair to
place the burden of submitting a segregating jury charge on the party
benefitting from the charge.  Cavnar, 696 S.W.2d at 556; KMG Kanal-Muller-Gruppe Deutschland GmbH
& Co. KG v. Davis, 175 S.W.3d 379, 39697 (Tex. App.Houston [1st
Dist.] 2005, no pet.); Freeman, 134
S.W.3d at 223. 

            The
issue here is whether diminution in value, as damages for a permanent nuisance,
include future damages for the purposes of prejudgment interest.  Damages for permanent nuisance include
compensation for all losses, future as well as present.  Crumpler, 372 S.W.2d at 320; Hutton, 58 S.W.2d at 20; City
of Amarillo v. Ware, 120 Tex. 456, 40 S.W.2d 57 (Tex. 1931).  In support of its argument, NGPC cites to Schneider National Carriers, where it
was stated that the lost market value awarded for a permanent nuisance reflects
all losses from the injury, including lost rents expected in the future.  147 S.W.3d at 276.  The Schneider
National Carriers court acknowledged that diminution in market value
includes damages for the future because, as the court explained, estimates of
market value, the relative measure of permanent nuisance damages, normally rest
on expectations about future years.  Id. at 27779.  

            We
believe NGPCs reliance upon Schneider
National Carriers is misplaced.  While
the Schneider National Carriers court
repeatedly refers to future damages when discussing permanent nuisance, it does
so in the context of the trade-offs between temporary and permanent nuisances.  147 S.W.3d at 27685.  It would be impossible to sever future damages
from present or past damages when calculating diminution in value because, as
the Schneider National Carriers court
explained, the market value of property is based upon the expectations of
future years, and the only two numbers used to calculate diminution in value
are a propertys market values.  Any time
there is a permanent loss, there would be the concurrent loss of the future
right of use; there is precious little value in the right of use during the
duration of a lightning flash.  Therefore,
we do not believe that the Schneider
National Carriers case holds that a permanent loss excludes the expectation
of use past the instant of loss.  Furthermore,
the purpose of prejudgment interest is to deter undue delay, encourage
settlement, and make up for the lost use of money during the pendency of
litigation.  Battaglia v. Alexander, 177 S.W.3d 893, 907 (Tex. 2005).  Should we determine that prejudgment interest
may not be awarded on permanent nuisance damages as NGPC contends we should, it
would directly conflict with the purpose of prejudgment interest and give
parties a large incentive to delay the litigation of permanent nuisance cases.  For the foregoing reasons, we overrule NGPCs
fourth point of error.

            We
affirm the judgment.

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date
Submitted:          March 24, 2010

Date
Decided:             April 30, 2010  











[1]Plaintiffs
First Amended Original Petition makes claims for nuisance, negligence,
trespass, and personal injury; however, permanent nuisance was the only claim
argued at trial.

 





[2]The
jury found that the compressor station was not a permanent nuisance as to
plaintiffs Robert Rast, as Executor of the Estate of Richard Rast, and Barry
and Tina Cope, and, therefore, did not award them any damages.  





 

[3]The
judge also awarded the plaintiffs $991.00 in costs. 





 

[4]NGPC
also cites Atlas Chemical Industries,
Inc. v. Anderson, 524 S.W.2d 681 (Tex. 1975), which we do not find
applicable here. 





 

[5]Chlordane
contamination occurs when interior chlordane levels exceed 0.5 micrograms per
cubic meter.





[6]Sufficiency
of the evidence must be reviewed using the definitions and instructions
contained in an unobjected-to jury charge.  Soto v. Seven Seventeen HBE Corp., 52 S.W.3d 201, 204 (Tex.
App.Houston [14th Dist.] 2000, no pet.) (citing Larson v. Cook
Consultants, Inc., 690 S.W.2d 567, 568 (Tex. 1985); Allen v. Am. Nat'l
Ins. Co., 380 S.W.2d 604, 609 (Tex. 1964)). 
Here, neither party objected to the instructions definition, and the
definition of permanent nuisance used in Question 1 matches the accepted
caselaw definition as stated in Holubec
v. Brandenberger, 111 S.W.3d 32, 37 (Tex. 2003), and Schneider Natl Carriers, 147
S.W.3d at 283.  





[7]The
separate jury awards are as follows:

                

                William
Bubba Justiss and Darlene Justiss                                 $540,000

                Joseph
Justiss                                                                                       $175,000

                Robert
Rast, as Executor of the Estate of Richard Rast             $0

                Tommy
Alspaugh and Judy Alspaugh                                            $270,000

                Barry
Cope and Tina Cope                                                                               $0

                Joe Denton Mashburn and Christine Mashburn                           $57,500

                Joe Donald Mashburn and Judy Mashburn                                   $200,000





[8]Some
of the plaintiffs testified to their propertys 2008 value with and without the
presence of the pumping station itself, while others testified to their
propertys 2008 value with and without the conditions caused by the pumping
station.  In either case, none of the
plaintiffs testified to the value of their property before and after June 1998.